# EXHIBIT 1



1  MARK WESBROOKS
   State Bar Number: 018690
2  THE WESBROOKS LAW FIRM, P.L.L.C.
   15396 N. 83rd Ave., Ste. C100
3  Peoria, Arizona 85381
   Telephone: (602) 262-4357
4  Facsimile: (888) 477-5598
   Attorneys for Plaintiffs
5

COPY

JUN 2 2 2020

CLERK OF THE SUPERIOR COURT
J. ORYIZ
DEPUTY CLERK

6           IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

7               IN AND FOR THE COUNTY OF MARICOPA

8  JULIE-ANNE HELMS, an Individual,        )  Case No.: ___CV2020-007160___
   HELMS & HELMS P.L.L.C., An Arizona      )
9  Professional Limited Liability Company, )  COMPLAINT
   Individually and on behalf of lawful Insureds )
10 Under Applicable Policy of Insurance,   )  [BREACH OF CONTRACT /
                                           )  INSURANCE BAD FAITH]
11                                         )
                                           )
12           Plaintiffs,                   )
                                           )
13      vs.                                )
                                           )
14 THE HANOVER INSURANCE GROUP,            )
   INC.; HANOVER INSURANCE COMPANY;        )
15 TRAVELERS CASUALTY INSURANCE            )
   COMPANY OF AMERICA; TRAVELERS           )
16 BOND AND SPECIALTY INSURANCE;           )
   THE TRAVELERS COMPANYS., INC.;          )
17 JOHN DOES I-XX, JANE DOES I-XX; XZY     )
   ENTITIES 1-100,                         )
18                                         )
                                           )
19           Defendants.                   )
                                      _____)

20 TO THE HONORABLE JUDGE AND JURY OF SAID COURT:

21

22     NOW COME, Plaintiffs, JULIE-ANNE HELMS, an Individual, HELMS & HELMS

23 P.L.L.C., An Arizona Professional Limited Liability Company, Individually and on behalf of

24 lawful Insureds Under Applicable Policy of Insurance (hereafter "Plaintiffs"), complaining

25 against Defendants, THE HANOVER INSURANCE GROUP, INC.; HANOVER INSURANCE

26 COMPANY; TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA;

27 TRAVELERS BOND AND SPECIALTY INSURANCE; THE TRAVELERS COS., INC.;

28

JOHN DOES I-XX, JANE DOES I-XX; XZY ENTITIES 1-100 (hereafter "Defendants"), and by way of cause of action allege the following:

1.    Plaintiff, Julie-Anne Helms, is an individual residing at material times in Maricopa County, Arizona.  At relevant times, Plaintiff, Julie Anne-Helms (hereafter "Plaintiff" or "Insured") was an authorized real estate professional and insured under Hanover Insurance Company Policy No. LH4 D532471-00 with policy period 03/20/2018 – 03/20/2019, with retroactive date to 03/23/2004 (the "Policy"), issued by one or more of such named Defendants, through her association with insured, Conrad Financial Services, upon which the Claim against the Insureds was presented.

2.    Plaintiff, Helms & Helms, P.L.L.C. is a Professional Limited Liability Company duly authorized to transact business in Maricopa County, Arizona, through representation of buyers and sellers in real estate transaction through its licensed realtors, including realtor Julie-Anne Helms.

3.    Plaintiffs, Julie-Anne Helms and Helms & Helms, P.L.L.C., bring claims in their individual capacity, as well as on behalf of any and all lawful Insureds under the subject Policy. Such Plaintiffs, along with all policy insureds, are hereby collectively referred to as "Plaintiffs" and "Insureds" under the subject Policies of Insurance.

4.    Defendant, The Hanover Insurance Group and Hanover Insurance Company ("Hanover"), upon information and belief, is a licensed insurance company duly authorized to engage in the sale and provision of insurance policies, directly, or through its subsidiary insurance companies including errors and omissions and comprehensive liability policies within the State of Arizona, and specifically Maricopa County. Such Defendant is a large insurer that advertises its insurance offerings in Arizona as incentives and flexibles specialty insurance

solutions to protect the businesses of their policyholders. Such Defendant also engages in the claim review process and acceptance or denial of claims presented against policyholders who are insureds under policies of insurance made available through Hanover, directly or by and through its subsidiary companies. Such Defendant has availed itself of the benefits and protections of the State of Arizona, and systematically and regularly transacts business with insureds in Arizona.

5.      Defendants Travelers Casualty Insurance Company of America, Travelers Bond and Specialty Insurance, and the Travelers Companies (hereafter collectively "Travelers") are insurance companies or subsidiary companies of other Defendants, who have sold insurance policies in the State of Arizona, creating rights and obligations towards insurers in exchange for paid premiums. Such Defendants have a duty of good faith and fair dealing towards its insureds, including the duty to properly receive claims and provide a defense to their insureds, as well as coverage where applicable.   Upon information and belief, one or more of such Defendants engaged in the transaction of sale of insurance and thereby bound coverage upon the subject Policy to defend claims made against their insureds, and to provide appropriate coverage where applicable. Travelers sold a policy of insurance identified as Policy No. 106483424 providing Real Estate Services Professional Liability Coverage with coverage dates that include the date of loss alleged in the underlying litigation: May 31, 2017.

6.      It is alleged that with respect to the subject Policy, that Hanover acted as agent and authorized representative of Travelers, or otherwise acted through assumption of liability thought prior acts coverage on its own policy, to receive and review the submitted Claim, and to accept or reject such claim, and which had the ultimate duty to defend the action, and to provide coverage as to certain claims and causes of action alleged in the underlying civil action.  In this regard, it is alleged that Hanover and Travelers share joint and several liability, or otherwise

have comparative liability based upon the provisions of the subject Policy, breaches thereof, and lawful damages to which Plaintiffs are justly entitled.

7.    Plaintiffs further allege causes of action against the Defendants, John Does I-XX, Jane Does I-XX, and XZY Entities 1-100, such Defendants being unknown persons or entities, who may be solely, or in combination, responsible for the breaches, harm and unlawful conduct and resulting injuries and damages to the Plaintiffs.

8.    Such Defendants, their acting agents, employees and representatives, are hereafter referred to singularly, or in combination, as "Defendants."

9.    Jurisdiction is proper in the Superior Court of Maricopa County, Arizona, as the claims made herein lie within the exclusive jurisdiction of the Superior Courts.

10.    Venue is proper in Maricopa County, Arizona, where one or more Defendants to the action conduct business activities and where all or part of the cause of action arose.

11.    For purposes of Ariz. R. Civ. Rule 26.2(b), the case characteristics warrant assignment as a Tier 2 Case based upon complexity. However, monetary damages sought herein qualify the case to be properly assigned as a Tier 3 case pursuant to Ariz. R. Civ. P., Rule 26.2(c)(3).

12.    Defendants issued policies of insurance termed as Real Estate Services Professional Liability Coverage ("Policies") referenced by Defendants as Hanover Policy policy/certificate No. LH4 D532471 00 and Travelers Policy No. 106483424, with Hanover's Policy including a retroactive date which would include the date of Claim by third parties against Plaintiffs as insureds, as further described hereinbelow. Defendants as insurers selling policies to consumers in the State of Arizona received premium payments upon such Policies at all times

from policy inception, up through and including the times relevant to this Complaint. In this regard, such Policy of Insurance was in full force and effect at relevant times.

13.    At all relevant times to this Complaint, Plaintiffs Julie Anne-Helms and her entity, Helms & Helms, P.L.L.C. were insureds under the subject policies of insurance, with rights and obligations under the subject errors and omissions insurance policies.

14.    On or about May 18, 2018, a lawsuit was filed in the United States District Court for the District of Arizona, entitled *Joseph and Carla Thuney v. Lawyers Title of Arizona Inc. an Arizona corporation; Julie Anne-Helms, an individual; Helms & Helms, P.L.L.C, an Arizona professional limited liability company, Key Bank NA, a national banking association; JP Morgan Chase N.A., a national banking corporation,* in case number: CV18-01513-PHX-HRH.

15.    Upon Plaintiffs having first received notice of claim being made against them, Plaintiffs promptly remitted a copy of the Summons and Complaint through their Broker to representatives of Defendants requesting that they be defended under the subject Policy. The Summons and Complaint in such cause are hereafter referred to as "Complaint" and/or "Notice of Claim." A copy of the underlying Complaint is attached hereto as Exhibit A.

16.    At the time Defendants were provided the Complaint notifying of claim, Defendants, through their agents and representatives, were presented with sufficient information to understand the nature and basis of claims made against Insureds, which included claims made through specific paragraphs of the Complaint filed in U.S. District Court claiming negligence generally against all named defendants, and specifically as to Insureds (see paragraphs 67 through 71 of the Complaint).

17.    Specifically, through such Complaint, causes of action could be reasonably understood to have been presented against Insureds alleging "breach of duty of trust and

confidence," breach of contract, and "failure to take reasonable steps to prevent misappropriation of confidential business information" (negligence).

18.     Furthermore, at paragraphs 75 through 76 of the Complaint, plaintiffs in such federal lawsuit make claims against these Plaintiffs/Insureds alleging breach of "duty of care" and "failure to use reasonable care in protecting" those plaintiffs from having financial information stolen.  Paragraph 75 of the Complaint further alleged that the Insureds "failed to use reasonable care" in implementing systems and having processes in place to protect such plaintiffs from harm. At paragraph 76 of the Complaint, damages were alleged to be a "direct and proximate result of [Insured's] negligence and gross negligence."

19.     In reviewing the totality of claims presented through such lawsuit against Insureds it is not fairly debatable that claims were presented in the lawsuit that were within the scope of defined coverage for alleged negligence and professional errors and omissions under the Policy.

20.     It is alleged that if the Complaint alleged any claim that would be covered under the subject policy (if proven), such covered claim arises the duty on the part of the Insurer to provide a full and complete defense of the case, which was wrongfully denied.

21.     On or about June 22 2018, Defendants, or one or more of them, by and through their authorized agents and representatives, wrongfully denied the claim, further denying any defense to Insureds as to any claim presented. A copy of the claim denial letter is attached hereto as Exhibit "B." Plaintiffs did not receive such correspondence until a date after that set forth in the letter itself.

22.     It is alleged that upon presentation of the Notice of Claim by Insureds that Defendants, or one or more of them, had a duty to conduct timely and adequate investigation into claims.

23.    It is alleged that upon presentation of the Notice of Claim by Insureds that Defendants, or one or more of them, had a duty to act reasonably when evaluating claims made against Insureds.

24.    It is alleged that upon presentation of the Notice of Claim by Insureds that Defendants, or one or more of them, had a duty to provide a defense to Insureds as to all claims made against Insureds, irrespective of the fact that one or more claims presented, if established as true, would be outside the scope of coverage, when other claims would fall within coverage.

25.    It is alleged that Defendants or one or more of them, in denying any defense and all claims, were motivated by the financial interests of the insurance company of saving money ahead of those interests of the Insureds to be properly defended as to the litigation.

26.    It is alleged that denial of the policy's obligation to provide a full defense to Insureds amounted to a breach of the insurance contract and bad faith on the part of the Defendants, or one or more of them, as Insurers doing business in Arizona.

27.    It is alleged that Defendants, or one or more of them as insurers, improperly denied the claim without reasonable basis to do so given the fact that general claims of negligence were asserted within the pleadings which presented covered claims, irrespective of other claims that may not have been covered, thereby triggering the duty to provide defense to Plaintiffs up to and including the full amount of the policy of $1,000,000.00.

28.    It is alleged that Defendants, or one or more of them as insurers or claims adjusters, breached their duty of good faith and fair dealing.

29.    It is alleged that Defendants, or one or more of them as insurers or claims adjusters, acted without reasonable basis in failing to perform an investigation or evaluation

adequate to determine whether its action of denying the claim and refusing to defend the action was supported by reasonable basis.

30.    As the result of wrongfully denying the claim and refusal of the Insurer to provide a defense as contractually obligated, Insureds were forced to employ their own attorneys to defend the action, which ultimately became financially impossible. It was obvious from the outset that the true claims were made by the plaintiff homebuyers in the federal litigation against the title company handling the financial transaction that resulted in harm. Although such was the case, Plaintiffs were left with an impossible financial obligation of paying attorneys to defend the underlying case. Ultimately, Plaintiff, Julie-Anne Helms, was required to file bankruptcy for the sole reason of denial on the part of these Defendants in failing to fulfill their contractual obligations under the Policy of insurance as required by law. Such conduct was tantamount to bad faith.

31.    Plaintiffs were entitled to a full and complete defense through utilization of the subject policy of insurance to pay for such defense up to and including the full amount of coverage of $1,000,000.00 if necessary.

32.    Defendants, or one or more of them, as insurers, breached the duty of good faith and fair dealing, thereby proximately causing harm to the Plaintiffs, including Helms & Helms, P.L.L.C. having to participate in dissolution proceedings to go out of business, with Plaintiff, Julie-Anne Helms, having to file bankruptcy. Such produced injury and financial harm to Plaintiffs, including the inability to maintain a proper defense and avoid financial ruin and bankruptcy.

33.    One or more of such Defendants' breaches were the cause of actual damages to Plaintiffs.

34.    Plaintiffs seek a full amount of damages within the jurisdictional limits of the Superior Court for the State of Arizona, including all compensatory losses for attorney fees, costs of suit in the underlying litigation, bankruptcy fees, emotional distress and mental anguish, losses for injury and damage to business reputation, loss of credit standing, loss of credit opportunities and ability to refinance, in addition to the total of claim benefits denied including attorney's fees and costs incurred, attorney fees and costs for the present litigation and as recoverable in contract actions in the State of Arizona, actual damages sustained through breach of contract, any and all financial losses incurred in the past, and which inevitably shall be sustained in the future, including punitive damages as warranted.    All such damages were foreseeable and a proximate cause of the conduct, unreasonable denials in bad faith on the part of Defendants as insurers.

35.    It is alleged that denial of the claim, and specifically denial of the duty to provide the policy proceeds to defend Plaintiffs in the multiparty federal litigation, was bad faith and for purposes of putting the insurer's interests ahead of Plaintiffs as insureds. There was no reasonable basis for denial of providing a defense to the claims asserted.  Upon information and belief, it is alleged that denial of a proper defense under the policy was orchestrated through decision that was callous and unjustified, purposeful and in bad faith for financial motive, understood by the insurer to leave Plaintiffs undefended and in a situation where they would reasonably sustained substantial damage and harm. As a result, Plaintiffs will show themselves entitled to recover punitive damages. Such matters are the subject of discovery to be engaged in the present case.

///

///

///

## COUNT ONE – BREACH OF CONTRACT

35.    Incorporated herein by reference or all of the paragraphs and pleadings throughout this complaint, each of which are incorporated herein by reference and for all purposes.

36    Plaintiff alleges that the denial of defense under the policy amounted to a breach of contract, affording Plaintiff with a right of recovery for all actual, incidental and consequential damages, as allowed by law.

37.    As the matter arises under contract, Plaintiff alleges entitlement to recover reasonable and necessary attorney fees pursuant to A.R.S. § 12-341.01.

38.    Plaintiff is entitled to recover costs of suit and litigation expenses. Such litigation expenses include fees paid to experts to assist the trier of fact in deciding the issues related to alleged breaches.

## COUNT 2 – NEGLIGENCE and BAD FAITH

39.    Incorporated herein by reference or all of the paragraphs and pleadings throughout this Complaint, each of which are incorporated herein by reference and for all purposes.

40.    Plaintiff alleges that at relevant times and on the occasions in question, the Defendants, acting through their authorized agents, employees and personnel, were guilty of various acts and/or omissions constituting negligence and a proximate cause of the damages sustained by Plaintiff.    Specifically, Defendants, or one or more of them, were guilty of the following acts and/or omissions:

a.    Defendants failed to put the interests of the insureds and beneficiaries ahead of the carrier.

b.    Defendants failed to properly investigate and consider the claim for benefits.

c.    Defendants failed to provide a proper defense under the terms of the subject policy, whereby claims presented in the underlying lawsuit included claims that would be potentially covered under the subject policy.

d.    Defendant failed to exercise such reasonable degree of care, as a prudent person under the same or similar circumstances.

Each of the foregoing acts and/or omissions constituted negligence and a proximate cause of the injuries and damages to the Plaintiff as Insureds.

41.    Plaintiff alleges that the conduct on the part of the insurer, acting through its agents, employees, and authorize personnel, amounted to bad faith insurance practices, for which statutory damages are appropriate.

42.    Plaintiff alleges that the Defendants committed unfair claims settlement practices in violation of A.R.S § 20-461, and its subparts.

43.    Plaintiff further alleges entitlement to statutory remedies, including interest on unpaid sums, pursuant to A.R.S., Section 20-462, and other provisions of law.

44.    Plaintiff alleges that the conduct on the part of Defendants operated as a purposeful invasion of property rights, such that Plaintiff should have and recover damages for pain, humiliation or inconvenience, and emotional distress, as well as pecuniary losses for expenses.

45.    Plaintiff alleges a breach of the implied duty of good faith and fair dealings in the claims handling process.

///

///

COUNT THREE - DAMAGES

46.    Plaintiff, as an insured in a first-party relationship with Defendant as insurer, should have and recover an appropriate full amount of damages which should include a full amount of actual compensatory damages, including any and all actual out-of-pocket expenses for attorney fees, costs of suit, litigation expenses, and other pecuniary losses.

47.    Damages for emotional distress, humiliation, inconvenience, and anxiety;

48.    Damages for loss of credit standing, loss of credit ability, including denial of refinancing opportunities, damage to reputation and inconvenience.

49,    Statutory damages, including trebling of damages were warranted.

50.    Upon information and belief, and although the subject of ongoing discovery, Plaintiff contends that the Defendants, or one or more of them, acted with an evil mind and/or engaged in conduct that had a substantial likelihood of a perceived risk of harm, and that such motivation was for purposes of placing the interests of the insurer ahead of the insured. Accordingly, Plaintiff seeks recovery of punitive damages as may be authorized by law, and as supported by the evidence.

51.    Plaintiff seeks recovery of all costs of suit and litigation expenses, including fees for expert analysis and time.

52.    Plaintiff seeks prejudgment and post judgment interest upon any award and as of the judgment rendered in this case.

53.    Plaintiff seeks recovery of all actual, incidental and consequential damages in an amount within the jurisdictional limits of the Superior Court of Maricopa County, Arizona, trebled as may be authorized by law.

1    WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon trial of the action,

2  that Plaintiffs have judgment against all responsible Defendants, to the extent of their

3
   contributions, for all actual, incidental and consequential damages as may be shown to have been
4
5  proximately caused by the negligence and bad faith insurance practices on the part of named

6  Defendants, in an amount within the jurisdictional limits of the Superior Court of Maricopa

7  County, Arizona, and that Plaintiff have such other relief to which Plaintiffs may be justly

8  entitled at law and equity.

9
                                        Dated this 22nd day of June 2020,
10
                                        Respectfully submitted,
11
                                        The Wesbrooks Law Firm, PLLC
12
13                                      /s/Mark Wesbrooks
                                        Mark Wesbrooks
14                                      State Bar Number: 018690
                                        Attorney for Plaintiffs
15

16

17
   ORIGINAL filed via
18 AZTurboCourt this 22nd day of
   June 2020, with the
19 Clerk of the Superior Court,
   Maricopa County, Arizona
20 14264 W. Tierra Buena Ln.
   Surprise, AZ 85374
21

22 /s/Mark Wesbrooks

23

24

25

26

27

28

Richard D. Elley (028245)
**Elley Law PLC**
3323 E. Baseline Rd.
Gilbert, Arizona 85234
(480) 788-4529
rich@elleylaw.com

W. Terry Scannell (OSB 85322)
**Scannellaw, LLC**
7128 SW Gonzaga Street, #220
Portland, OR 97223
503.776.0806
terry@scannellaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JOSEPH and CARLA THUNEY, a married couple, | Case No. |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| LAWYER'S TITLE OF ARIZONA, INC., an Arizona corporation; JULIE-ANNE HELMS, an individual; HELMS & HELMS, PLLC, an Arizona professional limited liability company; KEYBANK, N.A., a national banking association; JP MORGAN CHASE, N.A., a national banking association, | |
| Defendants. | |

The Plaintiffs allege as follows:

## INTRODUCTION

1.      Plaintiffs Thuney are a married couple that saved up enough money to buy a retirement home in Surprise, Arizona.

2.      The Thuneys arranged to put $119,555.73 down on a property they were buying.

3.      During the transaction, the unencrypted email account of the escrow company, Defendant Lawyers Title ("Lawyers") and/or the unencrypted email account of the real estate agent Julie-Ann Helms ("Helms") were compromised.

This is despite the fact that as early as 2015 the dangers of using unencrypted email in real estate transactions like this one was well known and publicized within the real estate industry.

4.      Because of Lawyers and Helms negligence, a forged email was used that appeared to be from Lawyers escrow account, that instructed KeyBank to transfer the money not to Lawyers but to a Chase bank Account controlled by individuals or entities conducting the fraudulent and criminal enterprise.

5.      Joe Thuney proceed with the transfer of funds in reliance on the email sent to him from what appeared to be a Lawyers Title employee.

6.      Joe Thuney in turn electronically forwarded this forged email using his computer to KeyBank.

7.      After several missed opportunities to detect the fraud by KeyBank, it transferred the funds from a KeyBank account held by Carla Thuney to what was thought to be Lawyers Title in Arizona.

8.      Instead, the money was sent to a JP Morgan Chase account located in Houston, Texas.

9.      Within five hours of the transfer, Joe Thuney suspected something was amiss and alerted KeyBank, Helms, Lawyers Title, and JP Morgan Chase of the fraud.

10.     All of the participants in the transaction had actual knowledge of the fraud within 7.5 hours of the payment request being made to Chase.

11.     Instead of the financial institutions freezing or retrieving the funds for the Plaintiffs, the bank Defendants engaged in a series of acts and omissions that led to JP Morgan Chase releasing funds it knew had been transferred to it as part of a criminal scheme to its "customer" who had perpetrated the fraud.

## JURISDICTION & VENUE

### A.      Jurisdiction

12.     This Court has original jurisdiction based on diversity, pursuant to 28 U.S.C. § 1338 because the action involves a controversy between citizens of

2

Elley Law PLC
3323 E. Baseline Rd.
Gilbert, Arizona 85234

1    different states and the amount in controversy exceeds $75,000, exclusive of

2    interest and costs. This Court also has jurisdiction over the state law claims in this

3    action pursuant to 28 U.S.C. § 1367.

4        **B.    Venue**

5        13.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a

6    substantial part of the events and omissions giving rise to the claim occurred in

7    this district. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because the

8    Defendants each conduct substantial business in this District, or have sufficient

9    minimum contacts with this District, and otherwise purposely avail themselves of

10   the markets in this District through the promotion, sale, and marketing of their

11   products and services in this District. In addition, the real property that is the

12   subject of the case is also located in the district.

## FACTS COMMON TO ALL CLAIMS

13

14       **A.    Parties**

15       14.    The Plaintiffs are a married couple who are residents of Clark

16   County, Washington and are both citizens of the State of Washington. While the

     KeyBank account at issue in this Complaint is held in the name of Carla Thuney, it

17   is the community property of both Plaintiffs.

18       15.    Lawyers Title of Arizona Inc., ("Lawyers") is an Arizona

19   corporation. A corporation is a citizen of any state where it is incorporated and of

20   the state where it has its principal place of business. 28 U.S.C. § 1332(c); *see*

21   *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).

22   Lawyers is incorporated in Arizona and has its principal place of business in

23   Arizona. For the purposes of diversity it is a citizen of the State of Arizona.

24       16.    Julie-Anne Helms (hereinafter "J. Helms") is an individual residing

25   in Maricopa County, Arizona. J. Helms is a Re/Max Preferred real estate agent. J.

26   Helms assisted the Thuneys in finding, placing an offer on, and attempting to

27   purchase the property involved in the transaction at issue. Julie-Anne Helms is a

28   Citizen of the State of Arizona.

3

Elley Law PLC
3323 E. Baseline Rd
Gilbert, Arizona 85234

1      17.    Helms & Helms, PLLC (hereinafter "Helms") is an Arizona
2   Professional Limited Liability Company run by Julie-Anne and Mark Helms.
3   Helms holds themselves out as "partners in life and partners in business." Helms
4   is the company through which Defendant Julie-Anne Helms runs her real estate
5   business as a contractor for the ReMax Real Estate company. Helms & Helms,
6   PLLC is a Citizen of the State of Arizona.

7      18.    Defendant JP Morgan Chase Bank, NA ("Chase") is a National
8   Banking Association with its principle place of business in Ohio. For the purposes
9   of diversity, it is a citizen of the State of Ohio.

10      19.    Defendant KeyBank NA ("KeyBank") is a National Banking
11   Association that also has its principle place a business in Ohio.  For the purposes
12   of diversity, it is a citizen of the State of Ohio.

13   **B.    Background Facts**

14      20.    In approximately 2016, the Thuneys decided to invest in a second
15   home in Arizona for the sake of Carla's health and to have her be in a better
16   climate during the winter.

17      21.    The Thuneys hired a real estate agent in Arizona, Defendant Helms,
18   to find a suitable home for them to assist them with the purchase.

19      22.    On or about April 2017, the Thuneys entered into an offer for the
20   real property commonly known as 15132 W. Ventura St., Surprise, AZ 85379.

21      23.    On or about April 27, 2017, the sellers accepted this offer.

22      24.    The Thuneys signed and executed an agreement pertaining to the
23   purchase of the home on W. Ventura St. on or about May 9, 2017.

24      25.    On or about May 9, 2017 at 4:43 PM, Helms sent an unencrypted
25   email with a copy of the Executed Contract for the property to Joe Thuney and
26   advised him that the file had been sent to Lawyers to establish an escrow account
27   and that Amanda Zalenski would be contacting them by phone.

28

Elley Law PLC
3323 E. Baseline Rd.
Gilbert, Arizona 85234

4

1    26.    On or about May 10, 2017 at 8:13 AM, the Thuneys received an

2    unencrypted email from Amanda Zalenski at Lawyers with instructions for

3    sending their $2,000 earnest money deposit.

4    27.    On or about May 10, 2017, the Thuneys, using a computer, sent the

5    instructions received from Lawyers to KeyBank that in turn arranged for the

6    payment of $2,000 earnest money to the account they were directed to by Amanda

7    Zalenski at Lawyers.  The Thuneys did not come into the offices of KeyBank.

8    28.    On or about May 11, 2017 at 7:41 AM, Lawyers, through its agent

9    Amanda Zalenski, sent an unencrypted email to the Thuneys, copying Helms and

10    Judy Meyer of Lawyers. The package contained an introductory packet with the

11    Thuneys' escrow number and applicable documentations.  At 8:45 AM she sent an

12    unencrypted email confirming receipt of the first earnest money deposit.

13    29.    On or about May 11, 2017 at 8:26 PM, Helms sent an unencrypted

14    email to the Thuneys with an Earnest Deposit Receipt from Lawyers, a Seller

    Disclosure statement, and instructions on the home inspection.

15    30.    On or about May 15, 2017 at 2:05 PM, Amanda Zalenski of Lawyers

16    sent an unencrypted email to the Thuneys which contained Lawyers Commitment

17    for Title Insurance and the Schedule B Exception.

18    31.    On or about May 16, 2017 at 10:24 AM, Joe Thuney received an

19    unencrypted email from Chicago Lawyers Insurance Services, Inc., an affiliate of

20    Lawyers, with a quote on homeowner's insurance.

21    32.    On or about May 31, 2017 at 9:00 AM, Joe Thuney received an

22    email purported to be from Amanda Zalenski of Lawyers stating that the Thuneys

23    loan had been funded and that they were set to close on the 9th of June.  The email

24    appeared to be from Amanda Zalenski of Lawyers who the Plaintiffs had

25    previously engaged in the prior escrow transaction with.  This email included a

26    signature line, logos, images, and other trade dress indicating it was from Lawyers.

27    In fact, this was a forged electronic document making it appear it was from

28    Lawyers when it was not.

5

Elley Law PLC
3323 E. Baseline Rd.
Gilbert, Arizona 85234

33.    The email also included a forged combined settlement statement and a letter apparently on Lawyers Title's letterhead showing the exact amount due at closing of $119,555.73 and the specific branch of Chase to make the wire transfer to.

34.    The amount of $119,555.73 given in the email described in paragraphs 10 through 23 showed the exact new down payment amount that had been agreed to only 20 days before.

35.    On or about May 31, 2017 at 9:08 AM, the Thuneys received another forged email telling them that the loan had been funded and asking that Joe Thuney call Lawyers to inform them once the transfer of funds was complete so the title could be filed for closing.

36.    On or about May 31, 2017 at 11:38 AM, using his computer, Joe Thuney sent the forged payment instructions to KeyBank. Joe Thuney's purpose in sending this email was to make a payment to Lawyers.

37.    On or about a time currently unknown to the Plaintiffs, KeyBank attempted to make the payment to Lawyers Title. The transfer did not go through.

38.    On or about Friday, June 2, 2017 at 8:10 AM, the Thuneys received another forged email from the person impersonating Amanda Zalenski stating that Lawyers had not yet received the wire transfer. Joe Thuney responded at 8:43 AM that he would check with KeyBank to see why it had not been completed. Thuney received an email back at 8:46 AM from the person impersonating Zalenski at Lawyers confirming.

39.    On or about June 2, 2017 at 10:59 AM, the fraudulent Amanda Zalenski sent a forged and updated set of wiring instructions for the closing funds. This forged email again had the look, feel, and trade dress of a document from Lawyers.

40.    On or about June 2, 2017 at 11:03 AM, using his computer, Joe Thuney sent an email to KeyBank containing the updated forged wiring instructions. The Thuneys did not come into KeyBank to arrange this wire.

6

Elley Law PLC
3323 E. Baseline Rd.
Gilbert, Arizona 85234

41.     At some point after 11:03 AM KeyBank called the phone number on the instructions and spoke to the fraudulent Amanda Zalenski to confirm the correct account numbers to send the transfer to.  KeyBank's agent stated that he was "hung up on" when he called the number and commented that the person he did eventually speak with talked with a "very heavy accent" and that the phone connection was very poor. Despite these facts, the KeyBank agent did not detect the fact that he was not dealing with Lawyers Title but was in fact talking to a participant in the fraud.

42.     After the weekend, on or about Monday, June 5, 2017 at 9:53 AM, the Thuneys received confirmation from the fraudulent Amanda Zalenski that the wire transfer of $119,555.73 had gone through, and attached a Receipt for Deposit that appeared to be from Lawyers Title.  This time, Joe Thuney noticed that the email addresses were slightly different and called the number on the fake wire instructions.  Joe Thuney called the fraudulent Amanda Zalenski, but there was no answer.

43.     On or about June 5, 2017 at approximately 3:00 PM, Joe Thuney called Helms after looking at the emails and becoming suspicious that something might be wrong.

44.     Six minutes later, on or about June 5, 2017 at 3:36 PM, Joe Thuney emailed Helms a copy of the fraudulent Receipt for Deposit, and told the agent that he thought there might be a fraud.

45.     On or about June 5, 2017 at 3:50 PM, Joe Thuney received an email from the fraudulent Amanda Zalenski stating that she had missed his call due to being in a "board meeting" and that they did not need to appear in person to sign the closing documents.

46.     On or about June 5, 2017 at 3:53 PM, Joe Thuney forwarded the email referenced in paragraph 35 to Helms to see if it was legitimate.

47.     Fifty-seven (57) minutes after Joe Thuney started to suspect that there had been a fraud on June 5, 2017, and at 3:57 PM, only hours after the

7

1   money transaction, Joe Thuney emailed KeyBank stating that there was a potential
2   problem and that they needed to cancel the wire transfer ASAP.  It was at this
3   point that KeyBank had actual notice of the fraudulent transfer.

4          48.    On or about June 5, 2017, between 3:27 PM and 5:57 PM, Joe
5   Thuney called and emailed Rob Eagar at KeyBank, the real Amanda Zalenski, and
6   Judith Meyer, assistant escrow officer at Lawyers, to try to determine what had
7   occurred and attempt to stop the transaction, informing each of the professionals
8   of the fraudulent activity. Judith Meyers also directed the Thuneys not to use
9   Amanda Zelenski's email because Lawyers thought her mail may have been
10  compromised.

11         49.    In that call, Lawyers represented that it had contacted its fraud
12  division to put a freeze on the funds at Chase and represented to Joe Thuney that
13  they contacted the FBI too and told the FBI there had been a fraud.

14         50.    As indicated, by this time KeyBank knew of the fraudulent transfer
15  as well and represented that they had contacted Chase and the FBI.

16         51.    Chase knew that there was a fraudulent transfer and represented to
17  KeyBank that the money was being held in their wiring department and that the
18  money was there, but would not verify the amount with either KeyBank or
19  Lawyers. The Thuneys were told this by both Lawyers and KeyBank.

20         52.    Shortly after June 5, 2017, Chase allegedly requested a recall and
21  hold harmless from KeyBank to return the money once Chase's investigation was
22  complete, which could potentially take up to thirty days. The Thuneys were told
23  that KeyBank provided all the information and indemnity agreement to Chase.
24  Chase told Lawyers that they had requested the pertinent information from
25  KeyBank and that they were issuing a debit to release the money at the completion
    of the investigation.

26         53.    Chase knew that this information would be transmitted to the
27  Plaintiffs.

28

8

Elley Law PLC
3323 E. Baseline Rd.
Gilbert, Arizona 85234

54.    On or about June 12, 2017, at 7:57 PM, Joe Thuney received a Cure Notice from the sellers of the property for failing to close on the house on June 9, 2017, due to the fraudulent transfer.

55.    On or about June 15, 2017, Chase informed Lawyers fraud representative that Chase was going to contact its account holder who had conducted the fraud to receive authorization to release the funds.

56.    Eleven days after having received actual notice of the fraud on or about June 19, 2017, the fraud representative from KeyBank confirmed that Chase had released the funds to the individuals or entities who had conducted the fraud. Joe Thuney was also informed that the funds were no longer available.

57.    The portion of the transaction described herein and related to KeyBank and Chase is subject to the Federal Electronic Funds Transfer Act.

58.    On or about June 28, 2017, Joe Thuney received confirmation from Pacific Office Automation, the technology support for his business email, that there had been no breach of data on his email.

59.    On or about July 3, 2017 at 2:28 PM, the Thuneys received notice from Lawyers that their Contract for Purchase had been canceled and that the sellers had been given their $2,000 earnest money deposit.  This was done by Lawyers without the approval of the Thuneys because they had "not performed."

60.    At no time has Lawyers, Helms, KeyBank, or Chase provided any report or written information to the Plaintiffs about what occurred or even if there had been an investigation of the events described above.  Nor did the Defendants agree to make any credit or payment to the Plaintiffs account.

## CLAIMS FOR RELIEF

### I.    FIRST CLAIM FOR RELIEF

### (Breach of a Confidential or Fiduciary Duty as to Defendants Lawyers and Helms)

61.    The preceding paragraphs are hereby incorporated by reference as if set forth in full herein.

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Elley Law PLC
3323 E. Baseline Rd.
Gilbert, Arizona 85234

## COUNT I AS TO LAWYERS

62.    In the transaction described in this Complaint, Lawyers was in part acting as the escrow agent or company.

63.    An escrow agent has a fiduciary relation of trust and confidence to the parties to the escrow, in this case to the Plaintiffs.

64.    Lawyers breached that duty of trust and confidence as more fully described herein.

65.    As a direct and proximate result of that breach the Plaintiffs have been damaged in the amount of $119,555.73 and for $2,000 that Lawyers insisted be paid to the sellers of the house.

66.    The Plaintiffs also seek $476,000 in punitive damages, as the breach of the duty by Lawyers was reckless and/or willful. Lawyers had knowledge about the dangers of using unencrypted emails and choose not to take reasonable steps to prevent the misappropriation of the confidential business information of the Plaintiffs.

## COUNT II AS TO HELMS

67.    In the transaction described in this Complaint, Helms was acting as the real estate agent for the Plaintiffs.

68.    A real estate agent has a fiduciary relation of trust and confidence to their clients, in this case to the Plaintiffs.

69.    Helms breached that duty of trust and confidence as more fully described herein.

70.    As a direct and proximate result of that breach, the Plaintiffs have been damaged in the amount of $119,555.73 and for $2,000 that Lawyers insisted be paid to the sellers of the house.

71.    The Plaintiffs also seek $70,000 in punitive damages, as the breach of the duty by Helms was reckless and or willful. Helms had knowledge about the dangers of using unencrypted emails and choose not to take reasonable steps to

10

1    prevent the misappropriation of the confidential business information of the
2    Plaintiffs.

3    **II.    SECOND CLAIM FOR RELIEF**

4    **(Negligence and Gross Negligence Against all Defendants except Chase)**

5        72.    The preceding paragraphs are hereby incorporated by reference as if
6    set forth in full herein.

7                              **COUNT I AS TO LAWYERS**

8        73.    Defendant Lawyers owed a duty of care to the Plaintiffs, who are its
9    customers, to use reasonable care in protecting the Plaintiffs from having their
10   private financial information stolen and used to defraud the Plaintiffs.  Lawyers
11   failed to use reasonable care in implementing encrypted email systems, by failing
12   to follow or have processes and procedures in place which would protect the
13   Plaintiffs from having their private financial information stolen from Lawyers, by
14   failing to detect the "spoofed" email addresses used by the perpetrators of the
15   fraud, by failing to detect an intrusion into Lawyers email or eSignature systems,
16   by failing to provide effective and specific warnings to its customers about the
17   dangers of escrow fraud, and by failing to meet Lawyers duty of care under ARS
     §13-2316 as made actionable under ARS § 44-1522 to prevent computer fraud.
18
19       74.    As a direct and proximate result of Defendants negligence and gross
20   negligence, plaintiffs sustained damages of approximately $119,555.73 plus the
     loss of $2,000 in earnest money. Plus $476,000 in punitive damages.
21
22                              **COUNT II AS TO HELMS**
23       75.    Defendant Helms owed a duty of care to the Plaintiffs, who are their
24   customers, to use reasonable care in protecting the Plaintiffs from having their
25   private financial information stolen and used to defraud the Plaintiffs.  Helms
26   failed to use reasonable care in implementing encrypted email systems, by failing
27   to follow or have processes and procedures in place which would protect the
28   Plaintiffs from having their private financial information stolen from Helms, by
     failing to detect the "spoofed" email addresses used by the perpetrators of the

                                          11

Elley Law PLC
3323 E. Baseline Rd.
Gilbert, Arizona 85234

fraud, by failing to detect an intrusion into its email or eSignature systems, by failing to provide effective and specific warnings to its customers about the dangers of escrow fraud, and by failing to meet Helms duty of care under ARS §13-2316 as made actionable under ARS § 44-1522 to prevent computer fraud.

76.     As a direct and proximate result of Defendants negligence and gross negligence, plaintiffs sustained damages of approximately $119,555.73 plus the loss of $2,000 in earnest money, plus $70,000 in punitive damages.

### COUNT III AS TO KEYBANK

77.     Defendant KeyBank owed a duty of care to the Plaintiffs, who are its customers, to use reasonable care in obtaining, reading, analyzing, verifying and using the wiring instructions and in wiring money from Plaintiffs' Account for purchase of the Property.

78.     KeyBank was careless, negligent and/or grossly negligent in several material respects including but not limited to:

A.     Failing to observe that the payment instructions were fabricated;

B.     Failing to observe that the payment instructions were not to Lawyers but to another entity that was not part of the transaction;

C.     Failing to observe that the payment instructions were fabricated once the first transfer did not occur;

D.     Failing to check the email address or phone numbers of the instructions once the first payment did not go through;

E.     Failing to observe that the person KeyBank contacted for the purposes of obtaining the payment instructions was not in fact an employee of Lawyers;

F.     Failing to abide by its own policies and procedures, or to adopt and implement commercially reasonable and commercially accepted security procedures to alert the Plaintiffs about the Fraudulent Transfer;

Elley Law PLC
3323 E. Baseline Rd.
Gilbert, Arizona 85234

12

G.     Failing to abide by its own policies and procedures, or to adopt and implement commercially reasonable and commercially accepted security procedures to obtain the verified approval of Plaintiffs, prior to KeyBank facilitating the Fraudulent Transfer;

H.     Wiring Plaintiffs' funds to an unknown person for purchase of the Property without Plaintiffs' knowledge or consent;

I.     Failing to take reasonable steps to retrieve the money from Chase upon learning that KeyBank had made an error in the payment;

J.     Failing to meet its duty of care under ARS § 13-2316 as made actionable under ARS § 44-1522 to prevent computer fraud.

K.     Failing in all instances to take all reasonable steps it could have taken to prevent the fraud when it was widely known in the banking industry that the type of fraud described in paragraphs 10 to 48 were wide spread and preventable.

L.     Failing to obtain an FBI "kill chain order".

79.     As a direct and proximate result of Defendants negligence and gross negligence, plaintiffs sustained damages of approximately $119,555.73 plus the loss of $2,000 in earnest money, plus $70,000 in punitive damages.

## III.   THIRD CLAIM FOR RELIEF

### (Aiding and Abetting Against Defendant Chase only)

80.     The preceding paragraphs are hereby incorporated by reference as if set forth in full herein.

81.     Individuals or entities currently unknown to the Plaintiffs engaged in the torts of fraud and conversion against the Plaintiffs as more specifically set forth in the paragraphs above.

82.     These entities or individuals were, and on information and belief still are, clients/customers of Defendant Chase.

Elley Law PLC
3323 E. Baseline Rd.
Gilbert, Arizona 85234

13

83.    On or about June 5, 2017, Chase had actual knowledge that these individuals or entities had engaged in acts of fraud or conversion against the Plaintiffs.

84.    Despite having this knowledge, Defendant Chase substantially assisted or encouraged these individuals or entities in achieving their goal of defrauding the Plaintiffs. Chase did this by knowingly and recklessly releasing and processing the misappropriated funds of the Plaintiffs to these individuals or entities. On information and belief, Chase is continuing to conduct business with these same individuals or entities and has not conducted a thorough investigation to stop them. This further allows these individuals or entities to continue to do business with Chase and defraud others.

85.    As a direct and proximate result of Chase's acts and omissions as set forth above the Plaintiffs have been damaged in the amount of $119,555.73 and for $2,000 in lost escrow payments.

86.    The Plaintiffs also seek $1,000,000 in punitive damages, as the breach of the duty by Chase was reckless and willful. Chase had direct knowledge about the theft in a timely manner so it could have stopped the fraud. Instead it chose not to take reasonable steps to prevent the misappropriation of funds of the Plaintiffs or to take other reasonable steps to investigate and prevent its "customers" from perpetrating the same fraud on others.

## IV.    FOURTH CLAIM FOR RELIEF

### (Violation of Electronic Funds Transfer Act as to KeyBank and Chase)

87.    The preceding paragraphs are hereby incorporated by reference as if set forth in full herein.

88.    Plaintiffs are both "consumers" as that term is used in 15 U.S.C. § 1693(a)(5) of the Electronic Funds Transfer Act ("EFTA").

89.    KeyBank and Chase are both "financial institutions" as that term is used in 15 U.S.C. § 1693(a)(8).

Elley Law PLC
3323 E. Baseline Rd.
Gilbert, Arizona 85234

14

1   90.   Plaintiffs' Account is an "account" as that term is used in 15 U.S.C.
2   § 1693(a)(2).

3   91.   The Fraudulent Transfer is an "unauthorized electronic transfer" as
4   that phrase is used and defined in 15 U.S.C. § 1693(a)(12).

5   92.   KeyBank violated its obligations under the EFTA by failing to
6   provide plaintiffs with the disclosures and notices required under that Act and
7   under Regulation E.

8   93.   KeyBank and Chase violated their obligations under the EFTA by
9   failing to perform a good faith investigation into the Fraudulent Transfer and by
10   failing to provide plaintiffs with the results of the investigation within ten (10)
11   business days in violation of 15 U.S.C. § 1693f(a).

12   94.   KeyBank and Chase violated their obligations under the EFTA by
13   failing to correct the account errors caused by the Fraudulent Transfer in violation
14   of 15 U.S.C. § 1693f(b).

15   95.   KeyBank and Chase unlawfully, recklessly, negligently, and/or
16   willfully denied plaintiffs the protections set forth in Regulation E including, but
    not limited to, the limitations on consumer liability set forth in 12 C.F.R. § 205.6.
17
18   96.   Pursuant to 15 U.S.C. § 1693g, Plaintiffs' maximum liability for the
    Fraudulent Transfer is Fifty Dollars ($50.00).
19
20   97.   KeyBank and Chase have both refused to credit the amount of
21   $119,555.73 back to the Plaintiffs account plus interest, and as a result of the
22   Fraudulent Transfer that is well in excess of Plaintiffs' maximum liability and
    which is in violation of 15 U.S.C. § 1693g.
23   98.   As a direct and proximate result of KeyBank and Chase's violations
24   of the EFTA, Plaintiffs have sustained damages in excess of $121,555.77 and
25   KeyBank and Chase are liable to Plaintiffs for the full amount of statutory and
26   actual damages along with their reasonable attorneys' fees and the costs of this
27   litigation, as well as such further relief as may be permitted by law.
28

Elley Law PLC
3323 E. Baseline Rd.
Gilbert, Arizona 85234

15

## V.    FIFTH CLAIM FOR RELIEF

### (Violation of Arizona's Consumer Fraud Act as to KeyBank and Chase)

99.    The preceding paragraphs are hereby incorporated by reference as if set forth in full herein.

100.    Plaintiffs have a private right of action under Arizona's Consumer Fraud Act (the "Act"). *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 575-576, 521 P.2d 1119, 1121-1122 (1974).

101.    A.R.S. § 44-1522(A) provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."

102.    "The terms of this provision [of the Act] are obviously quite broad and are not subject to restrictive interpretation because the Act is generally to be considered remedial in nature." *See People ex rel. Babbitt v. Green Acres Trust*, 127 Ariz. 160, 164, 618 P.2d 1086, 1090 (Ct. App. 1980).

103.    "'Sale' means any sale, offer for sale, or attempt to sell any merchandise for any consideration, including sales, leases and rentals of any real estate subject to any form of deed restriction imposed as part of a previous sale." A.R.S. § 44-1521(7).

104.    Defendants, as alleged herein, made false promises, misrepresentations, concealed, suppressed, or omitted material facts, with the intent that Plaintiffs reply on their actions or inactions in connection with the sale of real estate.

Elley Law PLC
3323 E. Baseline Rd.
Gilbert, Arizona 85234

16

1

**COUNT I AS TO KEYBANK**

2    105.    Defendant KeyBank concealed, suppressed, or omitted material facts

3    by ignoring the red flags of fraudulent activity, by failing to take the necessary

4    actions to stop the transaction, failing to obtain an FBI "kill chain order," or to

5    take the necessary actions or notify Plaintiffs of their ability to take the action to

6    stop the transaction or otherwise protect Plaintiffs from the known fraud.

7    106.    Defendant KeyBank intended that Plaintiffs rely upon the unlawful

8    practice as is shown by, among other facts detailed herein, that the transaction was

9    completed and KeyBank assisted with the same and that KeyBank permitted the

10   transaction to be completed, and that KeyBank failed to provide Plaintiffs the

11   necessary information to take action to stop the transaction or otherwise protect

12   Plaintiffs from the known fraud.

13   107.    KeyBank knew or should have known of the concealment,

14   suppression, or omitted material fact and acted upon them as they were provided

15   actual notice and should have known of the fraud prior to the actual notice.

16   108.    Plaintiffs were as unaware of the concealment, suppression, or

17   omission of material fact of KeyBank at the time as is shown by the Plaintiffs

18   actions and inactions.

19   109.    KeyBank misrepresentations were material in that had Plaintiffs and

20   other parties would have taken or been able to take additional actions to stop the

21   transaction or otherwise protect Plaintiffs from the known fraud.

22   110.    Plaintiffs did in fact rely on Defendant's the concealment,

23   suppression, or omission of material fact by, among other actions and inactions,

24   not contacting law enforcement directly.

25   111.    As a direct and proximate result of Defendants violation of the Act,

26   plaintiffs sustained damages of approximately $119,555.73 plus the loss of $2,000

27   in earnest money, plus $70,000 in punitive damages

28

17

Elley Law PLC
3323 E. Baseline Rd.
Gilbert, Arizona 85234

1

**COUNT II AS TO CHASE**

2          112.   Individuals or entities currently unknown to the Plaintiffs engaged in

3    the torts of fraud and conversion against the Plaintiffs as more specifically set

4    forth in the paragraphs above.

5          113.   These entities or individuals were, and on information and belief still

6    are, clients/customers of Defendant Chase.

7          114.   On or about June 5, 2017, Chase had actual knowledge that these

8    individuals or entities had engaged in acts of fraud or conversion against the

9    Plaintiffs.

10          115.   Despite having this knowledge, Defendant Chase substantially

11    assisted or encouraged these individuals or entities in achieving their goal of

12    defrauding the Plaintiffs. Chase did this by knowingly and recklessly releasing and

13    processing the misappropriated funds of the Plaintiffs to these individuals or

14    entities. On information and belief, Chase is continuing to conduct business with

15    these same individuals or entities and has not conducted a thorough investigation

16    to stop them. This further allows these individuals or entities to continue to do

17    business with Chase and defraud others.

          116.   Defendant Chase concealed, suppressed, or omitted material facts by

18    taking the actions of inactions detailed in paragraph 115, ignoring the red flags of

19    and actual fraudulent activity, by failing to take the necessary actions to stop the

20    transaction, failing to obtain an FBI "kill chain order," or to take the necessary

21    actions or notify Plaintiffs of their ability to take the action to stop the transaction

22    or otherwise protect Plaintiffs from the known fraud.

23          117.   Defendant Chase intended that Plaintiffs rely upon the unlawful

24    practice as is shown by, among other facts detailed herein, that the transaction was

25    completed, Chase assisted with the same, that Chase permitted the transaction to

26    be completed, and that Chase failed to provide Plaintiffs or other parties the

27    necessary information to take action to stop the transaction or otherwise protect

28    Plaintiffs from the known fraud.

Elley Law PLC
3323 E. Baseline Rd.
Gilbert, Arizona 85234

118.   Chase knew or should have known of the concealment, suppression, or omitted material fact and acted upon them as they were provided actual notice and should have known or did know of the fraud prior to the actual notice.

119.   Plaintiffs were as unaware of the concealment, suppression, or omission of material fact of Chase at the time as is shown by the Plaintiffs actions and inactions.

120.   Chase's misrepresentations were material in that had Plaintiffs or other parties would or could have taken additional actions to stop the transaction or otherwise protect Plaintiffs from the known fraud.

121.   Plaintiff did in fact rely on Chase's the concealment, suppression, or omission of material fact by, among other actions and inactions, not contacting law enforcement directly.

122.   As a direct and proximate result of Chase's violation of the Act, plaintiffs sustained damages of approximately $119,555.73 plus the loss of $2,000 in earnest money.

123.   The Plaintiffs also seek $1,000,000 in punitive damages, as the violation of the Act by Chase was reckless and willful. Chase had direct knowledge about the theft in a timely manner so it could have stopped the fraud. Instead it chose not to take reasonable steps to prevent the misappropriation of funds of the Plaintiffs or to take other reasonable steps to investigate and prevent its "customers" from perpetrating the same fraud on others.

## VI.   PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for relief as follows on their claims:

A.   On their First Claim for Relief, against Lawyers and Helms, for at least $119,555.77 plus any damages proven at trial, statutory and actual, along with punitive damages in the amounts of $476,000 against Lawyers, and $70,000 against Helms and their costs and disbursements for this litigation;

Elley Law PLC
3323 E. Baseline Rd.
Gilbert, Arizona 85234

19

1              B.      On their Second Claim for Relief, against Lawyers, Helms

2 and KeyBank, for Plaintiff's actual damages of $119,555.73 plus punitive

3 damages of $476,000 against Lawyers, $476,000 against KeyBank, and $70,000

4 against Helms.

5              C.      On their Third Claim for Relief, against Defendant Chase, for

6 Plaintiff's actual damages of $119,555.73, plus punitive damages in the amount of

7 $1,000,000.

8              D.      On their Fourth Claim for Relief, against KeyBank and

9 Chase, for Plaintiff's actual damages of $119,555.73, plus the Plaintiff's attorney

10 fees and costs pursuant to the statute plus punitive damages of $476,000 against

11 KeyBank and $1,000,000 against Chase

12             E.      On their Fifth Claim for Relief, against KeyBank and Chase,

13 for Plaintiff's actual damages of $119,555.73, plus the Plaintiff's attorney fees and

14 costs pursuant to the statute plus punitive damages of $476,000 against KeyBank

and $1,000,000 against Chase;

15             F.      On all Plaintiff's Claims for Relief for their attorney fees and

16 all costs on the basis as set forth in this Complaint;

17             G.      On all Plaintiff's Claims for Relief for their costs and

18 disbursements incurred herein;

19             H.      Any other relief the Court deems equitable and just.

20 **VII.   DEMAND FOR JURY TRIAL**

21        The Plaintiffs hereby demand trial of their claims by jury to the extent

22 authorized by law.

23        **DATED** this 1th day of May, 2018.

24                        **ELLEY LAW PLC**

25

26                   By: /s/ Richard D. Elley

27                       Richard D. Elley
                             *Attorney for Plaintiff*

28

Elley Law PLC
3323 E. Baseline Rd.
Gilbert, Arizona 85234



Mary Gertmeier
Hanover Insurance
mgertsmeier@hanover.com

June 22, 2018
*VIA US CERTIFIED MAIL AND ELECTRONIC MAIL*

Mr. Rich Conrad
Conrad Financial Services, Inc.
DBA ReMax Preferred Choice
6751 North Sunset Blvd S-320
Glendale, AZ 85305

Re:  Insured:        Conrad Financial Services
     Insurer:        Hanover Insurance Company
     Policy No.:     LH4 D532471-00
     Policy Period:  03/20/2018 – 03/20/2019
     Claim No.       19-00233612
     Claimants:      Joseph and Carla Thuney

### COVERAGE DENIAL

Dear Mr. Conrad:

Please be advised that The Hanover Insurance Company ("Hanover") was notified the above referenced matter on June 13, 2018. Hanover reviewed coverage with the information available and, unfortunately, the policy does not afford coverage for this matter. As such, Hanover is issuing you the following coverage denial letter.

## LAWSUIT ALLEGATIONS

The lawsuit is entitled "Joseph and Carla Thurney v Lawyer's Title of Arizona, Inc et al," and is filed in the United States District Court, for the District of Arizona, case number CV-18-1513-PHX-DJH.

The claimants allege Julie- Anne Helms, of Helms and Helms, PLLC, represented them in the purchase of their home. You informed me that Ms., Helms and her company work for you as an independent contractor. Codefendant Lawyers Title was the escrow company. Either Ms. Helms' or Lawyer's Title email account was compromised as the emails were unencrypted and computer hackers were able to impersonate Lawyers Title. The hackers instructed the bank to wire funds to an unauthorized account. As a result, $119,555.73 was absconded. Count 1 alleges breach of fiduciary duty against Ms. Helms and the claimants demand punitive damages as Ms. Helms breached her duty of trust and confidence owed to them. Count 2 alleges negligence or gross negligence against Ms. Helms due to the breach of that standard of care to prevent the claimants' private information to be stolen and used to defraud them.

## THE HANOVER POLICY

Your company has a Miscellaneous Professional Liability with Hanover Insurance, policy number LH4 D532471 00 with effective dates of March 20, 2018 through March 20, 2019. The policy provides $1,000,000 in limits per claim and $1,000,000 in aggregate limits. The $2,500 deductible applies to damages only. Claim expenses erode the policy limits.

333 West Pierce, Suite 300 | Itasca, IL 60143 | **p.** 630-521-8449 | **f.** 630-773-8767



Mary Gertmeier
Hanover Insurance
mgertsmeier@hanover.com

The insured should read the policy in full, but, for the ease of reference, the following provisions, terms and exclusions are relevant to this claim:

Throughout this **policy**, the terms **we**, **us** and **our** refer to the **Company** providing this insurance. The terms **you** and **your** refer to the persons and entities insured under this **policy**. Other terms in bold print have special meaning and are defined in the **policy**.

## A.  COVERAGE – WHAT THIS POLICY INSURES

1. Professional Services Coverage

**We** will pay on **your** behalf those sums which **you** become legally obligated to pay as **damages** and **claim expenses** because of any **claim** made against **you** arising from a **wrongful act** in the rendering or failure to render **professional services** by **you**.

The following additional requirements and limitations shall apply to coverage provided under **A.1** above and **A.3.** and **A.4.** below:

**a.** The **wrongful act** must have first occurred on or after the applicable **retroactive date(s)**;

**b. You** had no knowledge of facts which could have reasonably caused **you** to foresee a **claim** , or any knowledge of the **claim**, prior to the effective date of this **policy**; and,

**c.** The **claim** must first be made and reported to **us** in writing during the **policy period** or any **extended reporting period**, if applicable, and must arise from any **wrongful act** to which this **policy** applies.

***

## B.  DEFENSE AND SETTLEMENT (INCLUDED IN THE LIMIT OF LIABILITY)

**We** have the right to investigate and the exclusive right to defend any **claim** made under this **policy**, even if the allegations are groundless, false or fraudulent until there is a final adjudication against **you**. **We** are not obligated to defend any criminal investigation, criminal proceeding or prosecution against **you**. If a **claim** is not covered under this **policy**, **we** will have no duty to defend it.

***

## D.  DEFINITIONS

**Claim** means a written demand or **suit you** receive.

**Damages** means monetary judgments, awards or settlements unless otherwise excluded. Damages includes (i) pre-judgment interest; and (ii) post judgment interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court that part of judgment within the applicable limit of liability.

**Loss** means **claim expenses**, **damages** and **defense expenses** and does not include **equitable relief**.

**Professional services** means those services described in Item **6.** of the Declarations which **you** perform for others for a fee. Professional services was amended under the endorsement entitled Real Estate Professional Services Endorsement.  **Professional services** also means advice given or services performed by an **insured** for others as a **real estate agent**, but solely when such



Mary Gertmeier
Hanover Insurance
mgertsmeier@hanover.com

services are performed on behalf of an **insured** as a **real estate agency**; and provided that the **insured** is appropriately licensed by the state in which the **insured** is doing business.

Professional services in Item 6 of the declaration page are listed as "Real Estate Agent / Broker, Business Broker and / or Property Management.

**Real estate agency** means an entity doing business for compensation in the selling, leasing or marketing of commercial or residential real estate, including **property manager**, **short term escrow agent** or notary public services.

**Real estate agent** means an **insured** doing business as an agent, broker, referral agent, real estate consultant or counselor in the sale or leasing of commercial or residential real estate, including **short term escrow agent** or notary public services.

**Wrongful act** and **wrongful acts** means any actual or alleged negligent act, error, omission, or misstatement committed in **your professional services**.

**

### E.  EXCLUSIONS - WHAT THIS POLICY DOES NOT INSURE

This **policy** does not apply to **claim(s)**:

17.  Arising out of or resulting, directly or indirectly, from any actual or alleged commingling, misappropriation or improper use of funds or monies;

The Policy is also endorsed with the Real **Estate Professionals Services Endorsement with Limited Construction Development Coverage** which provides the following exclusion which is applicable to the matter:

**SECTION E – EXCLUSIONS** is amended by adding the following:

This **policy** does not apply to **claim(s)**:

Based upon or arising out of:

a)  Any conversion or improper use of funds or property;

The policy is also endorsed with the **False Pretenses Exclusion** which provides the following exclusion which is also applicable to this claim:

**SECTION E - EXCLUSIONS – WHAT THIS POLICY DOES NOT INSURE** is amended to include:

This **policy** does not apply to **claims** based upon, arising out of or in any way related to, directly or indirectly, any transfer, payment or delivery of funds, money or property, by anyone, which was caused or induced by trick, artifice, or the misrepresentation of a fact including, but not limited to, funds transfer fraud, social engineering, computer fraud, pretexting, phishing, spear phishing or any other confidence trick.

## COVERAGE DENIAL



Mary Gertmeier
Hanover Insurance
mgertsmeier@hanover.com

As quoted, the Hanover policy's insuring agreement provides, in pertinent part, that it will pay sums that the insured becomes "legally obligated to pay as damages and claim expenses because of any claim made against you arising from a wrongful act in the rendering or failure to render professional services by you." Hanover reserves its rights if complained of conduct did not arise from a "wrongful act" or in the course of rendering or failing to render "professional services", as those terms are defined under the policy.

Hanover must deny coverage under Exclusion 17 contained in the policy. Exclusion 17 bars coverage for claims "arising out of or resulting, directly or indirectly from any actual or alleged commingling, misappropriation or improper use of funds or monies". This exclusion operates to preclude coverage for this claim. The claim involves funds which were embezzled and / or misappropriated. As Exclusion 17 does not limit its applicability by who is alleged to have been or actually was commingling, misappropriating or improperly using funds or monies, it is enforceable here and excludes coverage. Hanover also denies coverage due to Exclusion a of the Real Estate Professionals Endorsement as the exclusion bars coverage for any conversion or improper use of funds. As such, the exclusion operates to preclude coverage as the funds were converted or improperly used. As the exclusion does not limit its applicability by who is alleged to have converted or improperly used the funds, it is enforceable here and excludes coverage. As the allegations of breach of fiduciary duty, negligence and gross negligence "arise" out of the misappropriation or conversion of funds, these allegations are part of the misappropriation or conversion claim and is excluded under the policy.

Hanover must also deny coverage under the "False Pretenses Exclusion" as the exclusion bars coverage for claims based upon, arising out of or in any way related to any transfer, payment or delivery of funds, money or property, by anyone, which was caused or induced by trick, artifice, or the fraudulent misrepresentation of a material fact including, but not limited to, social engineering, pretexting, phishing, spear phishing or any other confidence trick. The funds were transferred due to trick, artifice, or fraudulent misrepresentation through a social engineering scam. As such, the exclusion operates to preclude coverage. In addition, the claims of breach of fiduciary duty, negligence and gross negligence against your company are also precluded from coverage as these assertions "arise" from the transfer of funds by trick, artifice, or fraudulent misrepresentation of a material fact. The allegations are therefore part of the false pretense claim and are excluded under the policy.

The foregoing evaluation as to coverage is not an exhaustive review but as it determines whether coverage is afforded, an exhaustive review is not needed at this time. Our coverage decision is based upon, and is necessarily limited to, the materials currently in Hanover's possession. If you have any information which may impact this determination, please forward it to my attention at your earliest convenience. Hanover continues to reserve the right to raise other policy terms and conditions as defenses to coverage, which may be warranted in light of additional information received by Hanover. Hanover does not waive any rights it has or may have under the policy, at law or in equity, including those rights under terms of the policy not referenced in this letter. Nothing contained in or omitted from this letter should be construed as a waiver of any rights Hanover has or may have under the policy, at law or in equity.

If you disagree with our position, please send your response to me within in the following thirty (30) calendar days.

Please do not hesitate to contact me at 630-521-8449 or at mgertsmeier@hanover.com with any questions.



Mary Gertmeier
Hanover Insurance
mgertsmeier@hanover.com

Very truly yours,


Mary Gertsmeier
Hanover Insurance

Cc: Burns and Wilcox, LTD.